Mark YOUNG a/k/a Mark
Huddleston, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1302.

Court of Appeals of Alaska.

Oct. 16, 1987.

Sidney K. Billingslea, Asst. Public De-
fender, Kenai, and Dana Fabe, Public De-
fender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Of-
fice of Sp. Prosecutions and Appeals, An-
chorage, and Grace Berg Schaible, Atty.
Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS
and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Mark Young was convicted, after a non-
jury trial, of burglary in the first degree.
He appeals, contending that Superior Court
Judge James A. Hanson erred in denying a
motion to suppress Young's confession.
We affirm.

Young first contends that his con-
fession was involuntary. At the suppres-
sion hearing below, Young testified that,
during the two to three days immediately
preceding his arrest, he had gotten little
sleep and had been drinking and ingesting
various controlled substances, including co-
caine, marijuana, and hallucinogenic mush-
rooms. Young claimed that his drug use
and lack of sleep, coupled with a promise of
leniency made by the trooper who interro-
gated him, impaired his ability to make a
knowing, intelligent, and voluntary confes-
sion. After hearing Young's testimony
and a tape recording of Young's confes-
sion, Judge Hanson rejected this claim find-
ing in relevant part: "I'm satisfied here
that the officer did not make any promises
or assurances of the type that is forbid-
den.... Clearly Mr. Young's will was not
overborne in any fashion." Our indepen-
dent review of the entire record convinces
us that Judge Hanson did not err in reach-

ing this conclusion. *See State v. Ridgely*, 732 P.2d 550, 557 (Alaska 1987).

■ Young additionally contends that suppression was required because his interrogation was not recorded in its entirety. Young relies on *Stephan v. State*, 711 P.2d 1156 (Alaska 1985).[1] *Stephan* reaffirmed the requirement that police record custodial interrogations in their entirety when they occur in a place of detention. Under *Stephan*, an unexcused breach of the recording requirement will generally result in suppression of evidence obtained in the course of the interrogation. Nevertheless, this general rule of suppression is not without exception: where an interrogation is only partially recorded, suppression will not be necessary "if the unrecorded portion of the interrogation is, by all accounts, innocuous." *Stephan*, 711 P.2d at 1165.

In the present case, Young was questioned for a total of approximately thirty-five minutes by Alaska State Trooper Charles Tressler. Tressler did not begin recording the interrogation until Young indicated that he was prepared to confess ten minutes after the questioning began. The recorded portion of the interview lasted about twenty minutes and was followed by five or six minutes of unrecorded conversation. The unrecorded portion was thus approximately fifteen minutes in length. Judge Hanson found that there was no justification for Tressler's failure to record the initial ten minute segment of the interview. This finding is not challenged by the state on appeal.

Nevertheless, because a significant part of the interview was recorded, there was ample evidence presented to enable the trial court to make an independent, objective decision as to the extent to which Young was impaired by lack of sleep and drug use. Judge Hanson found that Young was totally in control of his faculties. This finding is not clearly erroneous, and is supported by the recorded portion of the interview. Young does not contend that any-

thing occurring during the unrecorded portion of the interrogation would have had any material bearing on the issue of his mental alertness. His exclusive claim is that a recording might have confirmed his testimony that Tressler made a promise of leniency.

Even if this were so, however, the recording would not have materially benefited Young, for Young's own testimony, when fully credited, does not cast doubt on the voluntariness of his confession. Young testified that Tressler began the interrogation by reviewing the evidence the troopers had accumulated in the case. According to Young, Tressler then said that, "[I]f I confessed, it would go easier for me." Young explained that, at that point,

> [T]he only thing I had in mind was going back to the [jail] dorm. I didn't even want to be in there, and I was tired, and ... this is an enemy to me, you know, and here I am, sitting with the drugs ... and here's this guy sitting here asking me questions, you know. He kept telling me, well, I got this, this, and this, and this for you, and so I finally said, to hell with it, I did it. And he says, will you say that on tape? And I said okay.

When specifically asked how he was affected by the promise that things would go easier if he confessed, Young replied, "I don't know. I just wanted to get out. You know."

Young's description of the promise of leniency must be considered in the context of the entire record in order to determine whether the likely influence of the promise was so great as to undermine the voluntariness of Young's confession. *Sprague v. State*, 590 P.2d 410, 414 (Alaska 1979). Our independent evaluation of the record leads us to conclude that, assuming the promise was actually made, its effect on Young's ability to make a voluntary confession was negligible. We agree with Judge Hanson's finding that Young's will was clearly not overborne.

---

1. Young was interrogated prior to the issuance of the decision in *Stephan*, but after the supreme court issued its summary order reversing Stephan's conviction. In considering Young's argument in the present case, we assume, without deciding, that the holding of *Stephan* applies to his case.

Because Young's own account of Tressler's promise does not justify a finding of involuntariness, and because a tape recording of the entire interrogation would at most have corroborated Young's testimony concerning the promise of leniency, there is no reasonable possibility that Tressler's failure to record the entire interrogation resulted in the loss of any material evidence. Accordingly, the superior court's denial of Young's motion to suppress did not amount to error.[2]

The conviction is AFFIRMED.

2. Young independently argues that the superior court erred in denying his motion to suppress the confession of his codefendant, Bernard Russi. Russi's confession was not used in evidence against Young at this trial. Accordingly, the issue is moot.